**Reversed and Remanded and Memorandum Opinion filed August 3, 2021.**



In The

# Fourteenth Court of Appeals

### NO. 14-20-00120-CV

## LANDMARK INTEREST CORPORATION, Appellant

## V.

## TEXMORE, INC. D/B/A CAMERON RECYCLING, Appellee

**On Appeal from the 239th District Court
Brazoria County, Texas
Trial Court Cause No. 90877-CV**

## M E M O R A N D U M   O P I N I O N

Appellant Landmark Interest Corporation appeals an order granting a no-evidence summary judgment in favor of a metals recycler, Texmore, Inc. d/b/a Cameron Recycling ("Texmore"), which purchased stolen copper wire allegedly owned by Landmark. The main dispute is whether Landmark, which paid for the copper wire, presented sufficient evidence that it had an ownership or possessory interest in the copper wire for purposes of a conversion claim. We hold that Landmark presented more than a scintilla of probative evidence of either an

ownership or possessory interest. Accordingly, we reverse the trial court's summary judgment order and remand the cause to the trial court.

## Background

Landmark was the general contractor in charge of constructing three self-storage facilities. Competence Electric, LLC was the electrical subcontractor. Landmark and Competence signed a Master Contract, pursuant to which Competence would perform electrical work at Landmark's construction projects.

Crawford Electric Supply Company supplied electrical materials for use in the projects. Allegedly because of Crawford's concerns about Competence's poor credit, Crawford insisted that Landmark and Competence sign Joint Check Agreements ("JCAs"), pursuant to which Landmark agreed to issue checks jointly payable to Competence and Crawford for the material supplied by Crawford to Competence.

Competence began ordering copper wire from Crawford. However, instead of shipping the copper wire to the project sites, Crawford, at Competence's request, shipped the copper wire to Competence's shop. Crawford then sent monthly requests for payment to Landmark. These monthly statements inaccurately indicated that the materials had been shipped to Landmark's three construction sites. Pursuant to the JCAs, Landmark paid Crawford for the amounts charged in the statements.

The copper wire was never delivered to Landmark's projects, nor did Competence ever install the wire at the projects. Instead, Steven Soliz, Competence's owner, sold the copper wire to appellee Texmore, a metals recycler.

After some time, Landmark "became aware that it was spending an inordinate amount of money on electrical materials" and ultimately learned that the

copper wire had never been delivered to the construction sites. Landmark determined that Competence was stealing the copper wire, selling it, and keeping the proceeds. According to Landmark, Competence stole and sold approximately 44,000 pounds of copper wire, for which Landmark had paid Crawford $171,632.45. When confronted, Soliz admitted to the theft.

Landmark sued Crawford, Competence, Soliz, and Texmore, asserting, as relevant here, a claim against Texmore for conversion. Texmore filed a motion for no-evidence summary judgment, arguing that Crawford, not Landmark, owned the copper wire stolen and sold by Competence. Therefore, according to Texmore, Landmark "lack[ed] evidentiary support that [it] owned, possessed, or had the right of possession to the property," and thus "[Landmark] cannot prevail on its cause of action for Conversion because there is no evidence of [its] ownership."

The trial court granted Texmore's motion and later signed orders disposing of all remaining claims.[1] Landmark appeals the summary judgment ruling in Texmore's favor.

## Standard of Review

In a no-evidence summary judgment motion, the movant asserts there is no evidence of one or more essential elements of a claim for which the nonmovant bears the burden of proof at trial. *See* Tex. R. Civ. P. 166a(i); *Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 310 (Tex. 2009). The motion must state the specific elements as to which there is no evidence. *Cmty. Health Sys. Prof'l Servs. Corp.* v. *Hansen*, 525 S.W.3d 671, 695 (Tex. 2017).

---

[1] The trial court previously rendered a default judgment in Landmark's favor against Competence and Soliz. Landmark settled its claims against Competence, Soliz, and Crawford. Additionally, Crawford settled its cross-claim against Competence and Soliz.

When responding to a no-evidence motion, the nonmovant must present more than a scintilla of probative evidence that raises a genuine issue of material fact supporting each element contested in the motion. *First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214, 220 (Tex. 2017). More than a scintilla exists when the evidence would enable reasonable and fair-minded people to reach different conclusions. *Burbage v. Burbage*, 447 S.W.3d 249, 259 (Tex. 2014). The nonmovant "is not required to marshal its proof; its response need only point out evidence that raises a fact issue on the challenged elements." *Hamilton v. Wilson*, 249 S.W.3d 425, 426 (Tex. 2008) (per curiam) (internal quotation omitted).

In reviewing a no-evidence summary judgment, we take as true all evidence favorable to the nonmovant and draw every reasonable inference and resolve all doubts in the nonmovant's favor. *Moore v. Bushman*, 559 S.W.3d 645, 649 (Tex. App.—Houston [14th Dist.] 2018, no pet.).

**Analysis**

**A.     Conversion**

In its first issue, Landmark challenges the trial court's order granting summary judgment to Texmore on Landmark's conversion claim.

A plaintiff suing for conversion must prove that (1) the plaintiff owned, possessed, or had the right to immediate possession of personal property, (2) the defendant exercised dominion and control over the property in an unlawful and unauthorized manner, (3) the defendant refused plaintiff's demand for return of the property; and (4) the plaintiff suffered injury. *Cluck v. Mecom*, 401 S.W.3d 110, 116 (Tex. App.—Houston [14th Dist.] 2011, pet. denied); *Robin Singh Educ. Servs., Inc. v. Test Masters Educ. Servs., Inc.*, 401 S.W.3d 95, 97 (Tex. App.—

4

Houston [14th Dist.] 2011, no pet.). In its no-evidence summary judgment motion, Texmore challenged only the first element: whether Landmark owned or had the right to immediate possession of the copper wire.[2]

The parties argue that resolution turns on whether the Uniform Commercial Code ("UCC") applies. Landmark contends that the copper wire is a "good" and that title to goods passes to the buyer at the time the seller completes the physical delivery of the goods, despite any reservation of a security interest. Tex. Bus. & Com. Code §§ 2.105(a), 2.401(b). Thus, according to Landmark, title passed to Landmark and Landmark became the owner of the copper wire upon Crawford's delivery of the copper wire to Competence's shop.

Texmore disputes the UCC's applicability. Chapter 2 of the UCC, on which Landmark relies, applies only to "transactions in goods; it does not apply to any transaction which although in the form of an unconditional contract to sell or present sale is intended to operate only as a security transaction." *Id.* § 2.102. Texmore argues that the JCAs were security agreements, not purchase agreements, and thus Landmark was merely an unsecured creditor and not a buyer of goods, for purposes of the UCC. Therefore, Texmore continues, ownership of the copper wire at no point ever transferred to Landmark but instead remained with Crawford.

We need not decide whether the UCC applies here. Even assuming that Texmore is correct and the UCC does not apply, Landmark still produced evidence that, under common-law principles, it possessed an ownership or possessory interest in the copper wire. Specifically, Landmark presented evidence that it paid Crawford for the copper wire ordered by Competence. To its summary judgment response, Landmark attached an affidavit from the company's president, David Boothe. Boothe testified that he determined "that Competence had stolen over

_____

[2] It is undisputed that Landmark did not actually possess the copper wire at any time.

5

twenty-two (22) tons -- forty-four thousand (44,000) pounds -- of copper wire and sold it to [Texmore] over a period of approximately eighteen months." Boothe "confronted Soliz about the theft and [Soliz] acknowledged to [Boothe] that he had been ordering copper wire materials from Crawford (that Landmark was paying for) and then selling that copper to [Texmore] and keeping the money."[3] Similarly, Curtis Enke, one of Crawford's credit managers, testified that Landmark "paid Crawford for materials that were not delivered to the project" and that Landmark "paid for [the copper wire] at Crawford's demand pursuant to the joint check agreement."

A party who pays for property owns the property, or at least obtains an interest in it. *See Wang v. Gonzalez*, No. 01-11-00434-CV, 2013 WL 174576, at *7 (Tex. App.—Houston [1st Dist.] Jan. 17, 2013, no pet.) (mem. op.) (evidence of payment supported jury's finding that party had 50% "ownership interest" in equipment); *Burns v. Rochon*, 190 S.W.3d 263, 268 (Tex. App.—Houston [1st Dist.] 2006, no pet.) (evidence that plaintiff paid for equipment supported trial court's finding of ownership); *Grabes v. Fawcett*, 307 S.W.2d 311, 312, 316 (Tex. App.—Texarkana 1957, no writ) (evidence that plaintiff paid for "a half interest in some machinery" was sufficient to establish that plaintiff had property interest and right of possession, in order to maintain action for conversion); *see also* "Purchaser," Black's Law Dictionary (11th ed. 2019) ("Someone who obtains property for money or other valuable consideration; a buyer.").

---

[3] In its brief, Texmore argues that Boothe's statement—that Soliz told Boothe that Competence had been ordering materials and selling the copper to Texmore—is conclusory because it does not provide the underlying facts to support its conclusion. Boothe's statement is not conclusory. The factual assertion (whether true or not) is that Soliz admitted to Boothe that Competence stole and sold the copper wire. *E.g.*, *Ortega v. Cach, LLC*, 396 S.W.3d 622, 627 (Tex. App.—Houston [14th Dist.] 2013, no pet.) (testimony that sale and assignment occurred was factual assertion, not conclusion requiring supporting documentation).

Moreover, Landmark's evidence established that the copper wire for which it paid was supposed to be sent to Landmark's projects for installation. A factfinder could reasonably infer from this evidence that Landmark had a right to possess materials intended for use in its own projects. *See* "Owner," Black's Law Dictionary (11th ed. 2019) ("Someone who has the *right to possess*, use, and convey something; a person in whom one or more interests are vested.") (emphasis added); *Fed. Sav. & Loan Ins. Corp. v. Kennedy*, 732 S.W.2d 1, 5 (Tex. App.—Houston [1st Dist.] 1986, writ ref'd n.r.e.) (rejecting defendant's argument that, because plaintiff did not have title to property, plaintiff could not recover on conversion claim; there was proof that plaintiff was owner of and entitled to possession of property, so "there could be a conversion of the property even though he did not have title"); *Grabes*, 307 S.W.2d at 316; *accord also Guyer v. Rose*, 601 S.W.2d 205, 207 (Tex. App.—Dallas 1980, writ ref'd n.r.e.) (buyer who fully performed under sales contract entitled to possession of real property even though buyer did not yet have title to property).

Accordingly, we conclude that Landmark produced more than a scintilla of evidence in response to Texmore's no-evidence summary judgment challenge to the first element of Landmark's conversion claim. The trial court erred in granting Texmore's motion on this ground. We sustain Landmark's first issue.

**B.     Summary Judgment Order**

In its second issue, Landmark argues that the trial court's summary judgment order granted more relief than Texmore requested in its no-evidence motion. Specifically, Landmark contends that the court reversibly erred by dismissing all claims against all parties alleged in Landmark's live pleading, not just Landmark's conversion claim against Texmore. *See, e.g.*, *Teer v. Duddlesten*, 664 S.W.2d 702, 703 (Tex. 1984) (holding that the trial court erred in granting

7

summary judgment in favor of party that "was not a party to the summary judgment proceedings").

We disagree. The court's order, entitled "Order Granting Defendant's No-Evidence Motion for Summary Judgment," provides in pertinent part:

> On this day came on to be heard the Motion for No-Evidence Summary Judgment previously filed by Defendant Texmore, Inc. d/b/a Cameron Recycling. . . . The Court . . . is of the opinion and here find that the Defendant's Motion for No-Evidence Summary Judgment should be GRANTED.
>
> IT IS THEREFORE ORDERED AND DECREED that Plaintiff take nothing for their claims as alleged in their Second Amended Original Petition and that Defendant, Texmore, Inc. d/b/a Cameron Recycling be dismissed on all issues, all claims, all theories of damages, and all parties with prejudice from this suit.

The order makes plain that Landmark's claim against Texmore—and Texmore only—is dismissed. Although the order states that Landmark shall "take nothing for [its] claims as alleged" in its live pleading, the very next clause ties that ruling to the specific dismissal of Landmark's conversion claim against Texmore—the only claim put into issue by Texmore's summary judgment motion. The order does not dismiss, with prejudice or otherwise, any issue, claim, or theory of damage raised by any party to the lawsuit other than Landmark's claim against Texmore. *Accord Nash v. Harris County*, 63 S.W.3d 415, 415-16 (Tex. 2001) (per curiam) (order that granted summary judgment as to individual defendants but that did not mention other institutional defendants could not be interpreted as adjudicating plaintiff's claims against institutional defendants).

Our reading of the order is confirmed by other undisputed facts in the record. At the time the trial court signed the order granting Texmore's no-evidence motion, May 8, 2019, Landmark had already secured a default judgment against Competence and Soliz as to all of Landmark's claims against those parties.

8

The trial court denied Competence's and Soliz's motion to set aside the default judgment in November 2018,[4] and neither the record nor the parties suggest that the court intended, by its summary judgment order, to dismiss Landmark's claims against Competence and Soliz for which Landmark had already secured a default judgment. On May 10, 2019, two days after the summary judgment order in Texmore's favor, Landmark, Competence, and Soliz entered into a settlement agreement resolving all claims among those parties. The following January, Landmark settled and dismissed its remaining claims against Crawford. These events do not support Landmark's interpretation of the summary judgment order.

We overrule Landmark's second issue.

### Conclusion

We reverse the trial court's judgment in Texmore's favor on Landmark's conversion claim and remand the cause to the court for further proceedings in accordance with this opinion.


/s/    Kevin Jewell
Justice


Panel consists of Justices Jewell, Bourliot, and Hassan.

---

[4] That ruling is not before us on appeal.